IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

MARY JO PULLEN-HUGHES

      Plaintiff,

                                    3:11-cv-01271-PK

                                    FINDINGS AND
v.                                 RECOMMENDATION

CITY OF PORTLAND, Oregon; CITY OF
BEAVERTON, Oregon; CITY OF GRESHAM,
Oregon; MULTNOMAH COUNTY, Oregon;
LEON EDWARD PANETTA, Secretary of
Defense; ERIC H. HOLDER, JR., Attorney
General of the United States; JANET
NAPOLITANO, Secretary of the Department
of Homeland Security; and HILLARY
RODHAM CLINTON, Secretary of State

      Defendants.

PAPAK, Magistrate Judge:

      Plaintiff *pro se* Mary Jo Pullen-Hughes filed this action against the Cities of Portland,

Beaverton, and Gresham, Multnomah County, Secretary of Defense Leon Panetta, Attorney

General Eric Holder, Secretary of Homeland Security Janet Napolitano, and Secretary of State

Hillary Clinton.  (#2.)  Pullen-Hughes alleges claims under 42 U.S.C. §1983 for violations of her

First Amendment and Fourth Amendment rights, and Oregon common law claims for false arrest

Page 1 - FINDINGS AND RECOMMENDATION

and defamation.  Pullen-Hughes seeks to proceed *in forma pauperis*.  (#1.)  For the reasons

discussed below, Pullen-Hughes' *in forma pauperis* application is granted, and the court should

dismiss *sua sponte* Pullen-Hughes' complaint without prejudice and permit her to amend her

complaint as described herein.

## FACTUAL BACKGROUND

Pullen-Hughes' complaint concerns events surrounding her November 2009 arrest for

telephone harassment and her February 2010 trial on that charge.  Pullen-Hughes alleges that on

November 201, 2009, she was arrested at her home by two City of Gresham police officers and

charged with three counts of telephone harassment.[1]  (Compl., #2, at 1.)  Pullen-Hughes further

alleges a "clear pattern of collusion between federal and state defendants to bring the false

telephone harassment charges leading to the false arrest and violation" of her constitutional

rights.  (Compl., #2, at 1-2.)  On February 22, 2010, Pullen-Hughes apparently stood trial on the

telephone harassment charges.[2]  (Compl., #2, at 3.)

Pullen-Hughes alleges that prior to her arrest, "agents of Defendants" -- ostensibly local

and federal law enforcement -- "conducted numerous harassing, unannounced visitations to

Plaintiff's residence, workplace, apartment manager's office and neighbors . . . ."  (Compl., #2, at

4.)  Agents for the defendants also allegedly made harassing visits after her trial as well.  *Id.*

Further, Pullen-Hughes alleges that between her arrest and her trial, defendants "published

---

[1]The complaint does not further describe the alleged telephone calls that lead to this
arrest, although it is likely that those calls involved federal officials, given the number of federal
agency heads named by Pullen-Hughes as defendants.

[2]The complaint also does not indicate whether Pullen-Hughs was acquitted of those
charges, although perhaps that allegation is implied from her contention that she suffered a false
arrest.

numerous spurious statements regarding Plaintiff's professional capacity and mental state. *Id.* at

3. Defendants also allegedly "share[d] and transmit[ted]" these "various agency documents with

each other." *Id.* at 5. As a result, Pullen-Hughes alleges she "incurred wage loss, endured

emotional distress, embarrassment, and social ostracism." *Id.*

Pullen-Hughes bases both her federal and state law claims on a theory of vicarious

liability. Instead of naming the individuals who personally participated in the deprivation of her

constitutional rights or committed the alleged torts, she names as defendants either the

municipalities or the federal department heads employing them. She contends that the Portland,

Beaverton, and Gresham police departments were acting as agents of their respective

municipalities and that the Multnomah County detention facility was acting on behalf of

Multnomah County. (Compl., #2, at 2.) Similarly, she alleges that Pentagon Force Protection

Agency personnel were agents of Defense Secretary Panetta, that Federal Bureau of

Investigation, US Marshals Service and United States Attorneys' Office personnel were agents of

Attorney General Holder, that United States Secret Service personnel were agents of Homeland

Security Secretary Napolitano, and that Diplomatic Security Service personnel were agents of

Secretary of State Clinton. (Compl., #2, at 2-3.)

### ANALYSIS

Federal Civil Procedure Rule 12(h)(3) provides that "[i]f the court determines at any time

that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P.

12(h)(3); *see also Cal. Diversified Promotions, Inc. v. Musick*, 505 F.2d 278, 280 (9th Cir. 1974)

("It has long been held that a judge can dismiss *sua sponte* for lack of jurisdiction"). A case is

properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or

constitutional power to adjudicate the case. *See, e.g., Home Builders Ass'n v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998); *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996). Moreover, in connection with *in forma pauperis* actions such as this, the district courts are obliged to dismiss *sua sponte* both actions that are frivolous or malicious, or actions that fail to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2).

Here, there are several defects in Pullen-Hughes' complaint that require *sua sponte* dismissal. First, Pullen-Hughes' § 1983 claims against federal defendants necessarily fail because they did not act under the color of state law, as required for a §1983 claim. Instead, Pullen-Hughes should bring her constitutional claims against federal defendants under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), which recognizes an implied cause of action for money damages under the Fourth Amendment for an injury caused by a federal agent acting under color of federal authority, and under *Gibson v. United States*, 781 F.2d 1334 (9th Cir. 1986), which provides a *Bivens* - type cause of action for federal agents' violation of First Amendment rights. Pullen-Hughes should also note that suits for money damages against federal officials in their official capacity are barred by the doctrine of sovereign immunity. *See Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1257 (9th Cir. 2008), *citing FDIC v. Meyer*, 510 U.S. 471, 485-86 (1994), *Nurse v. United States*, 226 F.3d 996, 1004 (9th Cir. 2000). Thus, if Pullen-Hughes amends her complaint, she should name any federal officials in their individual capacities only, so long as she continues to seek only monetary as opposed to injunctive relief.

Second, Pullen-Hughes cannot gain relief on her constitutional claims against any defendants-- whether municipalities or federal officials-- under a vicarious liability theory. A

municipality may be liable under § 1983 only where a constitutional deprivation was caused by the implementation or execution of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978); *Board of the County Commissioners v. Brown*, 520 U.S. 397, 403 (1997) ("[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."). Thus, if Pullen-Hughes wishes to state a § 1983 claim against municipalities in her amended complaint, she must allege that: (1) she was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to her constitutional right; and (4) the policy was the "moving force behind the constitutional violation." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996). Otherwise, she may choose to name as defendants the municipal employees who allegedly violated her constitutional rights and specify how each violated her rights. Similarly, if Pullen-Hughes amends her complaint to state claims against federal agents for money damages under *Bivens* and *Gibson*, she must name as defendants the individuals who personally violated her constitutional rights, not the various federal department heads. *See Ashcroft v. Iqbal*, __U.S__, __, 129 S.Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Pelegrino v. United States*, 73 F.3d 934, 936 (9th Cir. 1996) (since *Bivens* liability is premised on direct personal responsibility, there is no vicarious liability).

Third, Pullen-Hughes' allegations of First and Fourth Amendment violations lack several

important factual elements. Pullen-Hughes' complaint indicates that both her constitutional claims derive from her false arrest by defendants. Indeed, it appears that Pullen-Hughes views her arrest for telephone harassment as a form of retaliation for her "political speech." (Compl., #2, at 4.) Courts recognize that governmental "action designed to retaliate against and chill political expression strikes at the heart of the First Amendment." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). A claim for retaliatory arrest for the exercise of conduct protected by the First Amendment has three elements: (1) the plaintiff engaged in activity that is constitutionally protected; (2) as a result, she was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. *Blair v. Bethel Sch. Dist.,* 608 F.3d 540, 543 (9th Cir. 2010). Concerning the third element, a plaintiff must prove that the official both secured her arrest without probable cause and was motivated by retaliation against her protected speech. *See Beck v. City of Upland*, 527 F.3d 853, 863 (9th Cir. 2008). Here, Pullen-Hughes does not explain what speech she engaged in that is constitutionally protected and does not describe how her arrest was retaliation for that speech not based on probable cause. In her amended complaint, Pullen-Hughes should allege the facts necessary to support her First Amendment claim.

Similarly, Pullen-Hughes' allegation of false arrest is rather unspecific. False arrest in violation of a plaintiff's Fourth Amendment Rights requires the plaintiff to demonstrate that "there was no probable cause to arrest [her]." *Norse v. City of Santa Cruz*, 629 F.3d 966, 978 (9th Cir.2010) (en banc) (internal quotation marks omitted). Moreover, "[p]robable cause exists when the facts and circumstances within the officer's knowledge are sufficient to cause a

reasonably prudent person to believe that a crime has been committed." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1053 (9th Cir. 2009). Here, Pullen-Hughes alleges only that her arrest was "false." While this certainly gives defendants notice of the nature of Pullen-Hughes' allegation, she can more accurately state a claim for false arrest under the Fourth Amendment by alleging that the arresting officers lacked probable cause.

Because of these reasons described above, Pullen-Hughes' complaint as currently drafted fails to raise a plausible right to relief on her § 1983 claims. Accordingly, those claims should be dismissed *sua sponte* under 28 U.S.C. § 1915(e)(2). The court only has supplemental jurisdiction under 28 U.S.C. § 1367 to hear Pullen-Hughes' state common law claims for false arrest and defamation. Thus, if the court dismisses Pullen-Hughes' § 1983 claims, her state law claims would also likely be dismissed for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1367(c)(3) (a federal court may decline to exercise supplemental jurisdiction where it has already dismissed all other federal claims over which it had original jurisdiction); *Acri v. Varian Assocs.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). However, if Pullen-Hughes amends her complaint sufficiently to state §1983 claims and/or *Bivens* claims, the court would possess both subject matter jurisdiction over those claims and supplemental jurisdiction over her state law claims.

Notwithstanding the jurisdictional issue, there are other problems with Pullens-Hughes' state law claims that should be addressed upon amendment. First, to plead a claim for defamation under Oregon law, a plaintiff must allege: "(1) the making of a defamatory statement;

Page 7 - FINDINGS AND RECOMMENDATION

(2) publication of the defamatory material; and (3) a resulting special harm, unless the statement

is defamatory *per se* and therefore gives rise to presumptive special harm." *Nat'l Union Fire Ins.*

*Co. v. Starplex Corp.*, 220 Or. App. 560, 584 (Or. Ct. App. 2008), *citing L&D of Oregon, Inc., v.*

*American States Ins. Co.*, 171 Or. App. 17, 22, 14 P.3d 617 (2000). "A defamatory statement is

one that would subject another to hatred, contempt or ridicule or tend to diminish the esteem,

respect, goodwill or confidence in which the other is held or to excite adverse, derogatory or

unpleasant feelings or opinions against the other." *Id.* (internal quotation marks and

modifications omitted), *quoting Marleau v. Truck Insurance Exchange*, 333 Or. 82, 94 (2001).

Here, since Pullen-Hughes alleges a claim for libel based on publication of written materials, she

need not plead that defendants' statements were defamatory *per se* or caused her to suffer special

damages. *See Marleau v. Truck Ins. Exch.*, 333 Or. 82, 94-95, 37 P.3d 148 (2001).

Nevertheless, because Pullen-Hughes does not reproduce defendant's alleged statements in her

complaint, it is unclear whether she properly pleads the element of a defamatory statement.

Pullen-Hughes asserts that defendants' statements concerned her "professional capacity and

mental state" and her "mental health," but gave no indication of how defendants portrayed those

personal traits.  In her amended complaint, Pullen-Hughes should either provide the allegedly

defamatory statements verbatim or summarize their contents to the best of her abilities.   Pullen-

Hughes should also be aware that, under certain circumstances, sworn city police officers qualify

for an absolute privilege completely barring a claim for defamation. *See Chamberlain v. City of*

*Portland*, 184 Or. App. 487, 491, 56 P.3d 497 (2002).

Although Pullen-Hughes also includes in her complaint a state common law claim for

false arrest, she alleges few facts supporting that claim. The elements of common law false arrest

are: 1) the defendant confined the plaintiff; 2) the defendant intended the acts that caused the confinement; 3) the plaintiff was aware of the confinement; and 4) the confinement was unlawful. *Hiber v. Creditors Collection Serv. of Lincoln County, Inc.*, 154 Or.App. 408, 413, 961 P.2d 898 (1998). Therefore, plaintiff's amended complaint should allege facts concerning these elements. It is also possible that the tort of malicious prosecution would be an appropriate cause of action, given Pullen-Hughes' allegations linking her "political speech" and her false arrest. Malicious prosecution consists of "initiating or procuring criminal proceedings, from an improper motive and without probable cause, against another who is not guilty of the offense charged, and who ultimately gains a favorable termination of the proceedings." *Rogers v. Hill*, 281 Or. 491, 497, 576 P.2d 328 (1978).

In sum, several deficiencies in plaintiff's complaint require *sua sponte* dismissal. Plaintiff's §1983 cause of action fails to state a claim and this court would likely decline to exercise supplemental jurisdiction to hear plaintiff's state law claims once the federal law claims have been dismissed. However, a *pro se* litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. *See See Karim-Panahi v. Los Angeles Police Dep't.*, 839 F.2d 621, 623-624 (9th Cir. 1988). Accordingly, plaintiff's complaint should be dismissed *without prejudice* and she should be given 30 days to file an amended complaint curing the defects described herein. If plaintiff fails to file such an amended complaint, the case should be dismissed *with prejudice.*

## CONCLUSION

Upon examination of plaintiff's application to proceed *in forma pauperis*, the court finds that she is unable to afford the costs of this action. Therefore, her application (#1) is granted and

Page 9 - FINDINGS AND RECOMMENDATION

her *in forma pauperis* status is confirmed. Moreover, for the reasons set forth above, plaintiff's

complaint (#2) should be dismissed without prejudice. If plaintiff wishes to proceed with this

action, she should file an amended complaint: (1) alleging *Bivens*-type actions for federal agent's

violation of constitutional rights; (2) naming as defendants the individuals who personally

deprived her of her constitutional rights; (3) if proceeding against municipalities as defendants on

her § 1983 claim, alleging the existence of a municipal policy, ordinance, regulation, or decision

amounting to deliberate indifference to her constitutional right that was the moving force behind

defendants' constitutional violations; (4) describing the nature of her protected speech activity

and the connection between that speech and her arrest; (5) alleging the lack of probable cause for

her arrest; and (6) describing the defendants' allegedly defamatory statements. If plaintiff fails to

file an amended complaint, this action should be dismissed with prejudice.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any,

are due fourteen (14) days from service of the Findings and Recommendation. If no objections

are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a

copy of the objections. When the response is due or filed, whichever date is earlier, the Findings

and Recommendation will go under advisement.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a

waiver of that party's right to *de novo* consideration of the factual issues addressed herein and

will constitute a waiver of the party's right to review of the findings of fact in any order or

judgment entered by a district judge. These Findings and Recommendation are not immediately

appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1)

of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.


Dated this 28th day of October, 2011.

Honorable Paul Papak
United States Magistrate Judge