IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARY JO PULLEN-HUGHES

    Plaintiff,

v.

PARRIS LaCARIA, individually; JOSEPH
LUIZ, individually; DAVID NOORDELOOS,
individually; CLIFFORD HOECKER,
individually; ANNA ZEIGER KEPHART,
individually; ELIZABETH EAMES,
individually; JENNA PLANK, individually;
DAVID WOBORIL, individually; DALE
HOSKINS, individually; ERIC WALSTROM,
individually; JOHN DOES 1-3, individually;
CITY OF PORTLAND, a municipality; CITY
OF GRESHAM, a municipality; MULTNOMAH
COUNTY;

    Defendants.

3:11-cv-01271-PK

FINDINGS AND
RECOMMENDATION

PAPAK, Magistrate Judge:

    Two dispositive motions are before the court. Defendants Noordeloos, Kephart, Wahlstrom and LaCaria filed a motion to dismiss for failure to state a claim or, in the alternative, for summary judgment (#109), and defendants City of Gresham and Hoecker filed a motion for summary judgment (#125). This court's prior finding that the plaintiff's arrest was supported by

Page 1 - FINDINGS AND RECOMMENDATION

probable cause (See #107 & #108) applies equally to the remaining defendants in this case. The pending motions should be granted because probable cause defeats all of plaintiffs' claims, and because the individual defendants are entitled to qualified immunity. In addition, I recommend dismissing the remaining non-moving defendants sua sponte.

## FACTUAL BACKGROUND

Plaintiff Mary Jo Pullen-Hughes has a long history of repeatedly calling government agencies and high ranking government officials. In her Second Amended Complaint (#99) Pullen-Hughes recounts several of the calls she made in 2009 to: (1) the home of the United States Ambassador to the United Nations, Susan Rice (*id.* at ¶¶ 23-25); (2) Ambassador Rice's husband at his place of employment (*id.* at ¶ 25); (3) United States Secretary of Defense Robert Gates at his home in Washington state (*id.* at ¶ 28); (4) the Department of State's Operation Center (*id.* at ¶ 39); (5) Diplomatic Services' Office of Assistant Secretary (*id.*); (6) the United States Office of Inspector General (*id.* at ¶ 40); and (7) the Department of Defense (*id.* at ¶ 42). She also relates that for the five years preceding 2009 she had been "known as a 'frequent nuisance caller' to the Portland, Oregon FBI office," and that she made calls to an FBI agent's home number and "such calls were 'harassing' but not 'threatening'." (*Id.* at ¶ 30.) Not surprisingly, these repeated calls to high ranking federal government officials (some at their private homes, or to their family members) quickly earned the attention of various federal protective services agencies. (*Id.* at ¶¶ 8, 10, 12, 17, 26, 32, 33, 35, 38.)

Defendant Parris LaCaria, a special agent of the United States Department of Defense's Pentagon Force Protection Agency, was one of the protective service agents who investigated Pullen-Hughes and her phone calls. (*Id.* at ¶ 8.) In August 2009, LaCaria made a trip to

Portland, Oregon. He personally went to Pullen-Hughes' residence and told her to stop placing calls to Secretary Gates' home, the Pentagon, and the Department of Defense.[1] Pullen-Hughes responded that "she could call whom-ever she pleased." (*Id.* at ¶ 31.) In September 2009 she again made phone calls to Ambassador Rice, once leaving a voice mail the Ambassador considered "menacing" but not "threatening." (*Id.* at ¶ 34.)

Defendant David Noordeloos is another federal agent involved in the investigation of Pullen-Hughes' phone calls. He is a special agent for the United States Joint Terrorism Task force. (*Id.* at ¶ 10.) In October 2009, he personally went to Pullen-Hughes' residence and served her with a Cease and Desist letter.[2] (*Id.* at ¶ 37.) Pullen-Hughes again responded that "she would call whomever she wanted." (*Id.*)

Despite the Cease and Desist letter, Pullen-Hughes documents in her Second Amended Complaint six more calls she made to federal offices and agencies. (*Id.* at ¶¶ 39, 40, 42.) After a November 10, 2009 call that Pullen-Hughes made to the Department of Defense, LaCaria called local police. (*Id.* at ¶ 43.) Ultimately, LaCaria spoke with Gresham Police Officer Daryl Wray.[3]

---

[1] Defendant Eric Wahlstrom is a United States Marshal. (#99 at ¶ 17.) He accompanied LaCaria to Pullen-Hughes's residence. (*Id.* at ¶ 31.) That is the only factual assertion in Pullen-Hughes's Second Amended complaint mentioning Wahlstrom.

[2] Defendant Anna Zeiger Kephart is a special agent of the United States Department of State's Diplomatic Security Services Protective Intelligence Investigations. (#99 at ¶ 12.) She mailed a copy of the Cease and Desist letter to Pullen-Hughes. (*Id.* at ¶ 38.) That is the only factual assertion mentioning Kephart. (¶ 38).

[3] Officer Wray is not a named defendant in this matter. He has never been served and he has only been identified as John Doe #3 by Pullen-Hughes in her responsive brief to Defendant Hoecker's Motion for Summary Judgment. (#132 at p. 3.) In that brief, Pullen-Hughes "moves to amend her complaint via interlineation to replace John Doe 2 with [Gresham Police] Officer Schmidt and John Doe 3 with Officer Daryl Wray." (*Id.*) I decline the invitation to consider this request as a motion to amend, and for the reasons set forth below find that regardless of the

LaCaria told Wray about Pullen-Hughes' history of phone calls and the Cease and Desist letter. (*Id.*). LaCaria "requested that [local officers] respond to her residence, conduct a welfare check, and take appropriate police action." (*Id.*) LaCaria told Wray that they wanted "to take action against her for Telephonic Harassment." (*Id.* at ¶ 44.) Wray determined there was probable cause to arrest Pullen-Hughes for telephone harassment, and he conveyed that to Defendant Hoecker who made the arrest. (*Id.* at ¶ 45.)

Pullen-Hughes was charged with three counts of telephone harassment, two of which were later dropped. (*Id.* at ¶ 48.) She was tried and acquitted on the remaining count of telephone harassment which covered the November 10, 2012 call to the Department of Defense. The recipient of the November 12 phone call testified that she did not feel annoyed or harassed by the call. (*Id.* at ¶¶ 53, 55.)

## PROCEDURAL BACKGROUND

Pullen-Hughes seeks redress for what she believes was an unlawful arrest and prosecution for telephone harassment. She alleges claims under 42 U.S.C. §1983 for violations of her First, Fourth and Fourteenth Amendment rights, and a state law claim for malicious prosecution. Pullen-Hughes filed suit against ten individual named defendants, three John Doe defendants, and four government entities. Two individual defendants (Hoskins and Eames) have been voluntarily dismissed (# 96, 113.) Pullen-Hughes concedes summary judgment to the City of Gresham in this round of motions. (#132 at p. 7.) Also in this round of motions, Pullen-Hughes agrees to dismiss defendants Noordeloos, Kephart and Wahlstrom "from these claims," though it

---

identifications of the John Doe defendants, Pullen-Hughes has failed to state a claim against them.

Page 4 - FINDINGS AND RECOMMENDATION

is unclear from the context of the concession to which "claims" she refers. (#120 at p. 6.) Three individual defendants (Plank, Luiz and Woboril) have already succeeded on motions to dismiss. (#107, 118.)

On October 2, 2012, this court issued Findings and Recommendations (#107, the "F&R") addressing the aforementioned motions to dismiss. This court found that Pullen-Hughes' own allegations show that her arrest was supported by probable cause and as a result she failed to state a claim for First Amendment retaliation. (F&R at p. 12-13.) With respect to her Section 1983 Substantive Due Process claim the motion was granted on grounds that the moving defendants did not hatch a plan to launch a meritless prosecution against Pullen-Hughes. (F&R at p. 7-10.) In addition, because Pullen-Hughes failed to state a constitutional violation against the moving defendants, the court found they were entitled to qualified immunity. (F&R at p. 14-15.) Pullen-Hughes did not object to the probable cause finding or to any other aspect of the F&R. The District Court reviewed the F&R for clear error, and finding no error adopted the F&R in whole. (#118.)

## LEGAL STANDARDS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp., v Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the speculative level, "[t]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citations omitted). Instead, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly

Page 5 - FINDINGS AND RECOMMENDATION

suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009), (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In ruling on a Rule 12(b)(6) motion to dismiss, a court must take the complaint's allegations of material fact as true and construe them in the light most favorable to the nonmoving party. *Keams v. Tempe Tech. Inst.*, 39 F.3d 222, 224 (9th Cir. 1994). Moreover, the "court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56 (c). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). The court must view the inferences drawn from the facts "in the light most favorable to the nonmoving party." *Id.* (citation omitted).

...

## DISCUSSION

### I.   Probable Cause

The ultimate issue in the pending motions is whether Pullen-Hughes's arrest was supported by probable cause. Probable cause is a complete defense to §1983 claims for false arrest (Counts 1 & 6), to § 1983 claims for malicious prosecution (Count 3), and to malicious prosecution claims under Oregon law (Count 2). *Cabrera v. City of Huntington Park,* 159 F.3d 374, 380 (9th Cir. 2001)(lack of probable cause required to maintain §1983 false arrest claim); *See, Freeman v. City of Santa Ana,* 68 F.3d 1180, 1189 (9th Cir. 1995) (malicious prosecution as a federal due process claim); *Gustafson v. Payless Drug Stores Northwest, Inc.,* 269 Or. 354, 525 P.2d 118, 119-120 (1974) (Oregon malicious prosecution). In addition, a plaintiff cannot state a § 1983 claim for retaliatory arrest or prosecution in violation of the First Amendment (Counts 4 & 5) if the charges were supported by probable cause. *Hartman v. Moore,* 547 U.S. 250 (2006); *Dietrich v. John Ascuaga's Nugget,* 548 F.3d 892, 900-01 (9th Cir. 2008).

Pullen-Hughes argues "it is objectively unreasonable to believe that probable cause existed as to the *specific calls* that prompted Defendant LaCaria to contact the Gresham Police Department." (#132 at p. 5 (emphasis in original).) She also suggests that defendant Hoecker, the arresting officer, was duty-bound to conduct an independent investigation into the November 12, 2012 phone call. (*Id.* at p. ) Her arguments are unpersuasive.

Under the "collective knowledge doctrine," where one "officer knows facts constituting reasonable suspicion or probable cause . . . and he communicates an appropriate order or request, another officer may conduct a warrantless stop, search, or arrest without violating the Fourth Amendment." *United States v. Ramirez,* 473 F.3d 1026, 1037 (9th Cir. 2007). Immediately

Page 7 - FINDINGS AND RECOMMENDATION

preceding Pullen-Hughes's arrest in November 2010, it is undisputed that defendant LaCaria had direct knowledge of all of the following facts: (1) that Pullen-Hughes had made numerous phone calls to federal government agencies and officials, many of which were considered harassing; (2) that Pullen-Hughes had been warned twice in person to stop making such phone calls; (3) that Pullen-Hughes responded she would not stop making such phone calls; (4) that Pullen-Hughes was served with a Cease and Desist letter demanding that she stop making such phone calls; and (5) that she in fact continued to make such phone calls despite the warnings. It is also undisputed that LaCaria communicated all of those facts to Officer Wray and told him they wanted "to take action against her for Telephonic Harassment." (*Id.* at ¶ 44.) Officer Wray determined there was probable cause to arrest Pullen-Hughes for Telephonic Harassment, and contacted patrolling officer Hoecker to make the arrest. Hoecker was under no obligation to re-investigate the details of each specific phone call, and he was entitled to rely upon Wray's probable cause determination.

Because her arrest was supported by probable cause, Pullen-Hughes fails to state a claim upon which relief may be granted on Counts 1 - 6. In the same vein, each individual defendant acting under color of state law is entitled to qualified immunity because Pullen-Hughes has not alleged an underlying constitutional violation. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (first inquiry is to determine whether the facts alleged in the complaint show the government officer's conduct violated a constitutional right).

## II. Remaining Non-Moving Defendants

When a plaintiff cannot possibly win relief, a district court may sua sponte dismiss for failure to state a claim. *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988).

Page 8 - FINDINGS AND RECOMMENDATION

### A. Counts 1-6

The following defendants should be sua sponte dismissed because Pullen-Hughes has failed to state a claim against them in Counts 1-6: Doe 1; Doe 2; Doe 3; the City of Portland; and Multnomah County. The same probable cause rationale applies equally to these defendants as to the moving defendants.

### B. Count 7 – Monell claim vs. The City of Portland

Having conceded summary judgment to the City of Gresham on the *Monell* claim, the only remaining claim is Pullen-Hughes's *Monell* claim against the City of Portland. That claim is predicated on the City of Portland maintaining an "unofficial policy or practice of deliberate indifference that promoted, allowed, or facilitated detectives and police officers to request, assist, and perform unlawful seizures of the citizens of such as Ms. Pullen-Hughes in violation of the 4th and 14th Amendment." (#99 at ¶ 95.)

To establish municipal liability, Pullen-Hughes would have to show in this case that: (1) she possessed a constitutional right of which she was deprived; (2) the municipality has a policy; (3) the policy amounts to deliberate indifference to plaintiff's constitutional rights; and (4) the policy is the moving force behind the constitutional violation. *Mabe v. San Bernadino County Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1111 (9th Cir. 2001). Absent proof of a constitutional violation, there can be no *Monell* claim. *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). As discussed above, Pullen-Hughes was not deprived of any constitutional rights because her arrest was supported by probable cause. Accordingly, the Monell claim should be dismissed sua sponte.

### III. Other Arguments

Defendants LaCaria, Noordeloos, Kephart and Wahlstrom also seek dismissal because: (1) the *Bivens* claims are time barred; (2) Noordeloos, Kephart and Wahlstrom did not personally participate in arrest; (3) subsequent criminal proceedings provided alternate means for Pullen-Hughes to protect her constitutional rights; (4) the court lacks personal jurisdiction over Kephart; (5) absolute immunity and lack of subject matter jurisdiction bar the state law malicious prosecution claim. In light of the findings and recommendations above, I decline to consider these issues.

### CONCLUSION

For the foregoing reasons, defendants Noordeloos, Kephart, Wahlstrom and LaCaria's motion to dismiss (#109) should be granted, defendants City of Gresham and Hoecker's motion for summary judgment (#125) should be granted, and all claims against the remaining non-moving defendants – John Doe 1, John Doe 2, John Doe 3, Multnomah County and the City of Portland – should be dismissed sua sponte. Since this conclusion disposes of all remaining claims in this case, final judgment should be entered dismissing this case with prejudice.

///

///

///

///

///

///

///

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

Dated this 15th day of March, 2013.

Honorable Paul Papak
United States Magistrate Judge